You may proceed. First of all, thank you for letting me appear via video call. This is my first time and I'll try my best. I'm a little nervous. May it please the court, Hrisham Malik for Petitioner Adhizam Fatun Nadiye. This case involves two errors. First, the immigration judge applied the wrong legal standard when deciding the CLPR exception. Second, the credibility finding was based on minor differences that do not change the main story. For those two reasons, we ask the court to remand. So my first point, CLPR error. The regulation requires exceptionally compelling circumstances. Here, my client was assaulted at knife point and sexually touched while traveling with her female young child. And this is an extreme threat to safety. The immigration judge added a requirement that arm must continue or that she should have stayed in Mexico and waited. That requirement is not in the regulation. And my second point, that the inconsistencies that Ajay mentioned were about small details. The core event, the assault never changed. Under this court's cases, small differences are not enough if the main story stays the same. Well, maybe we should go through. I mean, there were a number of grounds. There were a number of grounds that the Ajay seemed to be concerned about. One of them was just the timeline and how it made sense that the timeline of her miscarriage and her divorce and then the child being a certain age. Can you respond to that? Um, I had my main thing was the the family violence that she suffered from her sister-in-law and from her mother-in-law. And because of that, she got her child miscarriage or aborted. And I. Hold on. Stop right there. That was in that was in April 2015. Is that is that right? Yes, Your Honor. And there's documentation on that, correct? Yes. OK, so that that happens on the 11th, April 11th, 2015. Yes. Then we go to the divorce, February of 2016, correct? Yes. And it seems to me that that's where there seems to be an inconsistency because she says her daughter is six months old. But then the birth certificate shows the daughter being born August 31, 2016. So, of course, the miscarriage could be documented and then she could have the daughter born. In August of 2016. But what do we do with her saying, well, when I moved in, I think it was with her mother. Yeah, there was six months old, but she hadn't been born yet. Yes, I understand. I think I believe that can also happen because of the trauma that she suffered and the memory and everything. So I believe that. So you're it's just this is just a mistake. Yes, I believe that it can be a mistake, Your Honor. Well, I guess the question is, is it collateral to what we're talking about and therefore can be overlooked in the heat of the testimony, the circumstances? What's your view on that? That's, yeah, exactly. That's what I am also thinking, Your Honor, that in the heat of the testimony and everything that was going on, maybe she has mistaken the timeline. I mean, we have cases that basically say, look, we're not going to hold you to these strict timelines because a lot of activities are going on. There's the passage of time and memory. But there is this the notion that your child was born and then you take that child to your mother. That's not forgetting whatever date that was. That's a fairly concrete event. So are we supposed to just overlook that inconsistency? I mean, the obviously it was one of about six issues, but that's the one that to me is the most concrete. The other is arguable. So what would be our authority to say, well, it's just a question of mistaken timing. Yes, I do understand that, Your Honor, and I believe that your opinion is correct. I am not going to say much about it. But if you can't say much about it, wouldn't that point toward denying the petition and in effect affirming where the IJ's credibility findings were sufficient? Your Honor, I would say that even though there are the timeline is very different. But again, if I say so, the mentors mentally harmed that she suffered due to the constant abuse due to the miscarriage and everything, it's because of that in her memory, the timeline, maybe it's different. Your Honor, she was constantly abused. There was domestic violence. There was back and forth pregnancies and there was miscarriage. What about some of the other points that the IJ was concerned about? So one of them was the in the declaration, she recounted some verbal abuse by her in-laws and then obviously the incident that resulted in the miscarriage. But then at the hearing, she testified that she was beat many times until she almost died. And the IJ regarded that as inconsistent with the declaration. So how do you address that? I would say the same thing, Your Honor. When you are tortured or suffered so much, sometimes things just go blank in your mind. And we were preparing the declaration. Maybe this was not something that she would remember at that time or maybe she didn't tell us at that time, but that's what happened with her. It's not something that she is, it's completely, completely opposite of each other. It's something that can be, okay, there was mental abuse, mental harassment. There was also physical abuse and physical harassment. Well, how about the number of times that the in-laws came to her house? Because again, the IJ seemed to rely on the fact that after she left at the time when her in-laws were trying to come and take the daughter, there was a single encounter. And then she testified a little differently that there was more constant harassment at the time. So how do you address that point? The in-laws came, I agree, Your Honor, just one time, but she was not living that far. So there was a possibility that they could come again and again to take the daughter back. I thought she testified a little bit more expansively than that, though, that they came and tried to bother her when she was grocery shopping and they would send other people to the house. And that was different than what she said in her declaration. Your Honor, I do acknowledge the fact that she talked more in her oral testimony in the court than her declaration. But I would also say there may be things jogged her memory more when she was there, when we were two hours sitting there and discussing everything about her past. So that can be happening. And what about the residence issue? She had put down her residence as Mabor, but then she said, I only lived there a week. But then in her testimony or application, she's talking about a seven-year period when she was moving around. What? So that's an inconsistency. The IJ says, well, that seems pretty big, a week here or seven years. What is the explanation or could the explanation just be, well, it's an inconsistency, but not related to persecution? Yes, Your Honor, that's absolutely correct. What is correct? Correct thing is that it is inconsistency and I agree with you, Your Honor, respectfully, but this is not something that is related to her persecution. Is that correct, though? I mean, I thought part of what she was saying was that she fled to Mabor and that was essentially part of the persecution and that she reacted to that by leaving to a place that was six hours away, but then the asylum application seems to say that she had been living there for eight years. Yeah, I have no comment on that. I apologize, Your Honor. So, you know, one thing in a case like this, you really do have to distinguish between what relates to the persecution and what doesn't, but it didn't seem in reading your brief that that occurred because we have, we're faced with, I think, six different examples by the IJ of the inconsistency, but just as a friendly note, I think it would help the court down the road in cases where if you have that, you need to respond to that and either link it up with persecution or say, well, memories fade. And as you've said, she had been tortured and persecuted. She was in a very bad way, but I'm having trouble divining that from the argument here, I must say. Thank you so much for giving me this friendly reminder, Your Honor. I really appreciate it. And I would also say one thing that during what happened in Mexico with her, that has affected her a lot because she was there with her like eight, eight years old daughter, seven to eight old daughter, and then sexually she was assaulted by the Mexican gangs. I clearly do not know who those people were, but then she literally offered herself so they would not do anything to her daughter. And that affected her so much, that period of time that she suffered all those things that mentally affected her again because she suffered something back home. She thought she's going to come here, things will be better, but then the shock that affected her so much. Could I just ask you one record question? And maybe it's not much, but the certificate of marriage, it's a certificate of witness of a religious marriage. And apparently it was, there's a date on the translation of April 10th, 2017. At the bottom, it's kind of strange. It says their divorce was on February 10th, 2016. Is that typical? Is that the way certificates of marriage are prepared to also show the date of divorce? Or do you know? No, I, to be honest, I do not know the specific thing about that country, but I believe when there are religious marriage, they don't register them immediately until unless the marriage certificate is needed somewhere. Like I'm from India and my parents' marriage was never registered, still not, but they are still living, you know. Let me ask you, let me, let me ask the question a little bit differently. Is there any doubt that their divorce was on February 10th, 2016? Any, I saw you on it. I don't know. I don't know. I'm not the best. Is the source of this document that Judge Paez is referencing, is that a document that you provided to the record? You submitted that document on your client's behalf or did the document come from somewhere else? I, no, I think she provided us the document, Your Honor. We submitted on her behalf. She gave us the document. We're taking you over your time, but we'll put two minutes on the clock for you to respond to the government. So we'll give you two minutes and we'll hear from the government now. Thank you, Your Honor. May it please the Court. Micah Engler on behalf of the Attorney General of the United States. In this case, substantial evidence supports the agency's denial of asylum and withholding of removal based on the adverse credibility determination. The agency provided specific and cogent reasons and relied on the totality of the circumstances that was supported by the evidentiary record. As Your Honor has just discussed with opposing counsel, the board that the record supports. Petitioner does not argue that these did not occur. Rather, in the opening brief, Petitioner states that they were minor inconsistencies. First, these inconsistencies do not have to go to the heart of the claim, but in this case, they actually do go to the heart of the claim. Petitioner's fear is of her former in-laws and whether they will circumcise her minor daughter if they return to Senegal. Just about every one of these inconsistencies and implausibilities has to do with her relationship with her former in-laws and her interactions with them. Whether it's how many times they physically harmed her in her declaration, she says one time. In her testimony, she says many, many times that it was a habit of theirs. How many times they would call her, how many times they called her when she was in hiding. So is that an inconsistency or an omission? Your Honor, I believe that that would be an inconsistency with the declaration. Do you agree that our case law suggests that omissions can be treated different than actual inconsistencies? Yes, Your Honor. Omissions can be treated differently. However, when I believe that we cited case law saying that when they are an attempt to buttress the claim during testimony, then the agency is allowed to review those omissions as well as part of its adverse credibility determination. Let me just ask, is it the case that each of these six points that were raised by the IJ, can they be aggregated for a finding of lack of credibility or do you need to look at each one? What is the structure for evaluating these? I heard a lot of aggregation in the previous argument. The standard is totality of the circumstances. The immigration judge said that that's what he was doing. The board said that that was proper and that that's what the line, how many inconsistencies there have to be. So, it seems like it's similar to the in the aggregate, but the court and the agency has not used in the aggregate for this test to my knowledge. Some of these do strike me as being somewhat minor. And, you know, if you say that maybe three of them, four of them are really not true inconsistencies or omissions or not supported by the record. So, under a case law, we recognize that if you set aside some of the inconsistencies or whatever, the findings, that that may be enough to sort of pull the rug out from under the adverse credibility finding and it should go back for further consideration. I mean, do you disagree with that idea? That's our case law, Elon. No, no, your honor. I don't disagree with that, that if you remove enough of the inconsistencies, then there might no longer be an adverse credibility determination. But the question is, well, there still might be the agency on a further look may include, yes, we still believe there is an adverse credibility. Yes, or it's not enough. Right. The question is whether any reasonable fact finder would be compelled to conclude to the contrary, that this is not a valid adverse credibility determination by the agency. And in this case in particular, it's a it's a strong adverse credibility determination. They go through the board, at least highlight six different of these inconsistencies and omissions and addresses how the immigration judge provided petitioner an opportunity to explain them. And petitioner was unable to do so. The immigration judge went through each of the explanations that was given. And but they were not reasonable to the immigration judge in terms of explaining away these inconsistencies. I mean, some of some of these inconsistencies are very basic, like where was your last residence in Senegal? And petitioner listed a different residence in Mabour for seven years to where she lived. And then she said she only lived there actually for a week back when she was in Senegal because she lived six hours away with her mother during those seven years. That that type of inconsistency is is hard to remedy. One of the arguments that opposing counsel made was that the petitioners endured a good deal of both in Senegal and on her way to the United States. And how do you think that should factor into the analysis? Your Honor, I didn't see any argument and petitioners opening brief with case law supporting that that is something that we should be taking into account at this stage. But unfortunately, that isn't uncommon in these types of cases. And you can use that as an explanation when you're before the immigration judge or even before the board. But that's not that's not really what happened here. There wasn't a consistent explanation that that's why there's issues with memory. And also, when every when almost every one of the inconsistencies is a bolstering of the claim, that makes it seem like it's not necessarily a problem with memory, but an attempt to enhance the claim before the immigration judge. It seems we've exhausted our questions. And unless you have anything to add, I'll thank you for your presentation. Thank you, Your Honor. Thank you. We'll hear rebuttal. Thank you, Your Honor. We do not dispute that credibility is reviewed under a differential standard. And we do not dispute that multiple inconsistencies can support the claim. And we do not dispute that multiple inconsistencies can support an adverse credible finding. The issue is here, whether the inconsistencies relied upon where material and whether they are meaningful undermine the court claim. Several of the discrepancies identified, including the residential issue related to collateral background details, rather than to alleged assault itself. Under this court's precedence, if a number of a number of the inconsistencies are either not supported by the record or are immaterial, then the credibility determines determination cannot stand as currently structured and most be reconsidered. We are not seeking the court to review the facts, but to ensure that the credibility findings reflects on material inconsistencies, evaluate under the totality of the circumstances, including trauma and displacement. Thank you. Thank you. We thank you for your presentation. We thank both counsel for the briefing and argument. This case is submitted.
judges: McKEOWN, PAEZ, BRESS